382 B.R. 861 (2008)
Maria G. Bonilla MARRERO, Debtor.
Wilfredo Segarra Miranda, Chapter 7 Trustee, Plaintiff-Appellee,
v.
Doral Financial Corporation, Defendant-Appellant.
BAP Nos. PR 07-039, PR 07-040, Bankruptcy No. 01-08787-SEK,
Adversary No. 03-0073-SEK.
United States Bankruptcy Appellate Panel of the First Circuit.
January 22, 2008.
*862 *863 Sergio A. Ramírez de Arellano, on brief for Defendant-Appellant.
Noemi Landrau Rivera, on brief for Plaintiff-Appellee.
Before HILLMAN, FEENEY & KORNREICH, United States Bankruptcy Appellate Panel Judges.
KORNREICH, Bankruptcy Judge.
In this case from the United States Bankruptcy Court for the District of Puerto Rico, Doral Financial Corporation ("Doral") appeals (1) the grant of summary judgment in favor of the Chapter 7 trustee in an avoidance action under 11 U.S.C. § 549; and (2) the order overruling Doral's objection to the Chapter 7 trustee's notice of intent to sell real property. For the reasons set forth below, we affirm.

BACKGROUND
Maria Bonilla Marrero (the "Debtor") filed a Chapter 13 petition in August, 2001. Her schedules show her to have been the owner of a residence with a market value of $225,000. The schedules also show Doral to have been the holder of first and second mortgages on her residence upon the commencement of the case. Doral filed two proofs of claim, one in the amount of $186,132.11, and another in the amount of $20,541.69, secured by first and second mortgages on the residence.[1]
On May 30, 2002, Doral moved for relief from stay to foreclose on the Debtor's residence. Neither the Debtor nor the Chapter 13 trustee filed an objection. Instead, the Debtor chose to convert her case to Chapter 7 by filing a notice of conversion on June 13, 2002. Relief from stay was granted to Doral on June 27, 2002, after the conversion and before the appointment of a Chapter 7 trustee. Wilfred Segarra Miranda became the Chapter 7 trustee (the "Trustee") on July 18, 2002.
Following relief from stay, the Debtor averted foreclosure by refinancing her indebtedness. Under her arrangement with Doral the balances due on both pre-filing notes were consolidated. The existing first and second mortgages were cancelled and replaced with a new first mortgage on the residence. The new note was in the amount of $243,000, an amount larger than the sum of the two original notes and greater than the scheduled value of the property. The new note and mortgage are dated September 20, 2002. Although it is difficult to ascertain from the record on appeal whether or not the original mortgages were discharged, it is very clear Doral intended that they be cancelled[2] The refinancing was accomplished without notice to the Trustee, creditors or bankruptcy court approval. Shortly thereafter, on October 22, 2002, the Debtor received her discharge.
*864 The Trustee did not abandon the residence. Instead, he gave notice of his intention to sell it at public auction. The Debtor objected, contending that it was no longer part of the bankruptcy estate and that its entire value was subject to the new mortgage. After hearing the parties on the Debtor's objection, the bankruptcy court gave the Trustee an opportunity to bring an avoidance action.
The Trustee commenced an adversary proceeding under several avoidance theories including the avoidance of the new mortgage as a post-petition transfer under 11 U.S.C. § 549(a).[3] His complaint also sought authority to sell the Debtor's residence at public auction free and clear of all liens and an order compelling Doral to discharge the pre-petition mortgages. Doral's central defense under § 549(a) was that, when the new mortgage was granted, the Debtor's residence was no longer property of the bankruptcy estate.
The Trustee moved for summary judgment on the undisputed facts. In response, among other things, Doral amplified its § 549(a) defense by asserting that there was no denial of due process in the Trustee's failure to receive notice and an opportunity to be heard on the relief from stay motion.
The bankruptcy court granted the Trustee's motion for summary judgment. In its opinion and order dated December, 27, 2006, the court rejected Doral's arguments and concluded that the Trustee was entitled to challenge the refinancing because he had not received notice of the request for relief from stay; that the residence could not be deemed abandoned in the absence of clear and unequivocal abandonment by the Trustee; and that Doral had "failed to meet its burden of showing that the refinancing of the mortgage loan did not involve estate property subject to avoidance under 11 U.S.C. § 549." No separate judgment was entered in the avoidance action at that time.
On March 7, 2007, the Trustee filed a notice of his intention to sell the residence at private sale for $250,000. Doral objected, stating that, as a consequence of the avoidance, it should be treated as a secured creditor on the basis of its original mortgages. In an endorsement order dated April 3, 2007, the bankruptcy court overruled Doral's objection and declared its claims to be unsecured. Doral filed a notice of appeal from this order on April 12, 2007.
On April 20, 2007, the bankruptcy court entered a judgment in the avoidance action incorporating the terms of its earlier opinion and order on the summary judgment motion. Doral filed a timely notice of appeal on April 27, 2007. The appeals have been consolidated.

JURISDICTION
A bankruptcy appellate panel must determine its jurisdiction before proceeding to the merits even if it goes unchallenged *865 by the litigants. See In re George E. Bumpus, Jr. Constr. Co., 226 B.R. 724 (1st Cir. BAP 1998). A panel has jurisdiction to hear appeals from "final judgments, orders and decrees. . . ." 28 U.S.C. § 158(a). "A decision is final if it `ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.), 218 B.R. 643, 646 (1st Cir. BAP 1998).
An order granting summary judgment is a final order. See Burrell v. Town of Marion (In re Burrell), 346 B.R. 561, 566 (1st Cir. BAP 2006) ("An order granting a motion for summary judgment is a final order that ends the litigation on the merits of the complaint."). An order approving a sale of property is also final. See Jeremiah v. Richardson, 148 F.3d 17, 23 (1st Cir.1998). Thus, both orders on appeal in this case are final and subject to review.

STANDARD OF REVIEW
Appellate courts generally apply the clearly erroneous standard to findings of fact and de novo review to conclusions of law. See TI Fed. Credit Union v. Del-Bonis, 72 F.3d 921, 928 (1st Cir.1995); Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.), 43 F.3d 714, 719-20 n. 8 (1st Cir.1994). A bankruptcy court's determination that a party is entitled to summary judgment is a legal conclusion subject to de novo review. See Burrell, 346 B.R. at 566-67 (citing Razzaboni v. Schifano (In re Schifano), 378 F.3d 60, 66 (1st Cir.2004); Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 763 (1st Cir.1994)). Moreover, a bankruptcy court's order with respect to a motion to sell property under § 363(b) may only be overturned on appeal if the bankruptcy court abused its discretion. See White v. Official Comm. of Unsecured Creditors (In re Cadkey Corp.), 317 B.R. 19, 22 (D.Mass. 2004) (citing In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D.Del. 1999)).

ISSUES ON APPEAL
Doral raises many issues on appeal. They all boil down to two questions:
A. Did the bankruptcy court err in granting summary judgment to the Trustee and in avoiding the mortgage under § 549(a)?
B. Did the avoidance of the Doral mortgage violate the "single satisfaction rule" under § 550?

DISCUSSION
The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico, 394 F.3d 40, 42 (1st Cir.2005) (quoting Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir.1992)).
Doral does not challenge the bankruptcy court's findings of fact on summary judgment. It readily concedes all of the pertinent facts and acknowledges that the delivery of the post-petition mortgage was a transfer within the meaning § 549(a). Doral also concedes that there was no error of law in the bankruptcy court's conclusion that it failed to meet its burden of showing that the delivery of the new mortgage was not a transfer of estate property subject to avoidance under § 549(a). See Fed. R. Bankr.P. 6001. The undisputed facts establish all four of the necessary elements for avoiding Doral's post-petition mortgage under § 549(a): (1) There was a transfer (2) of property of the estate (3) after the commencement of the case (4) that was not authorized under the Bankruptcy *866 Code or by the bankruptcy court. See Riley v. Tougas (In re Tougas), 338 B.R. 164, 177-78 (Bankr.D.Mass.2006) (citations omitted). On this platform, Doral has raised abuse of discretion as grounds for reversal.
A. Abuse of Discretion.
Doral argues that the exercise of the avoidance power by a trustee under § 549(a) is a matter of discretion for the court. According to Doral, the phrase "the trustee may avoid a transfer of property of the estate" in the first sentence § 549(a) requires the bankruptcy court to review a trustee's exercise of the power under a benefit to the estate test as a condition of avoidance.[4]See 11 U.S.C. § 549(a) (emphasis supplied). Doral contends that the court's failure to review the Trustee's exercise of the avoidance power under that standard was an abuse of discretion.
Doral misapprehends the grant of discretion under § 549(a). It is the trustee who is invested with the discretion to pursue or not pursue avoidance in a given instance; and it is the trustee who must weigh the relative costs and benefits of avoidance. The grant of discretion under § 549(a) is an executive power akin to prosecutorial discretion. Like other executive powers, it would be subject to judicial review for cause (e.g. fraud, self dealing, or other breach of duty) upon a proper and timely challenge. But apart from that, when exercised, the avoidance power given to a trustee under § 549(a) must be evaluated on the merits of the complaint and the evidence adduced. When all of the elements of avoidance have been met, as they were in this case, judgment must enter for the trustee. Further, a bankruptcy court may not apply its general equitable powers to disregard or contravene the Code's unambiguous provisions; or, as Doral would have it in this case, to save a defendant creditor from its own improvident actions. See AFCO Credit Corp. v. Baxco Corp. (In re Baxco Corp.), 148 B.R. 855, 859 (Bankr.N.D.Ill.1992) (where the court refused to "deviate from the plain language of the Code. . . . and apply equitable considerations to uphold an otherwise avoidable transfer" under § 549).
There was no abuse of discretion. Moreover, the benefit to the estate is apparent.
B. Single Satisfaction Rule
The judgment avoiding the new mortgage without the reinstatement of the original mortgages left Doral holding unsecured debt. This result was sustained in the bankruptcy court's declaration of unsecured status in the order approving the Trustee's sale motion. Doral views this outcome to be an award of double damages in violation of the single satisfaction rule stated in § 550(d). Doral's view reflects a misunderstanding of the interplay of subsections (a) and (d) of § 550.
Subsection (a) provides that a "trustee may recover, for the benefit of the estate, the property transferred, or, if the *867 court so orders, the value of such property. . . ."[5] Under the Bankruptcy Code's rules of construction, "or" is not exclusive. See 11 U.S.C. § 102(5). With that rule, in mind, one could take subsection (a) to mean that upon avoidance a trustee could recover more than one satisfaction by obtaining the property transferred and the value of such property from one or more transferees. Subsection (d) eliminates that possibility by stating that "[t]he trustee is entitled to only a single satisfaction under subsection (a) from a transferee that is not an insider." See 11 U.S.C. § 550(d).
The Trustee's avoidance of the post-petition mortgage was, in effect, a recovery, for the benefit of the estate, of the property transferred-the Debtor's residence. That recovery was clearly a single satisfaction within the meaning of § 550(d). The order approving the sale of the residence, with its declaration of Doral's unsecured status, was in no way an award of a second satisfaction. It simply allowed the Trustee to convert property of the estate into cash for distribution free and clear of the lien that had been avoided under § 549(a) and the liens that Doral, itself, had cancelled.
Relying upon Fleet Nat'l Bank v. Gray (In, re BankVest Capital Corp.), 2003 WL 1700978 (D.Mass.2003), Doral argues that when a post-petition transfer is avoided under § 549, the pre-transfer status quo must be restored. But Doral's reliance upon BankVest is misplaced. Unlike the present case, the secured status of the creditor's claim was not challenged in BankVest. The transfers in that case were payments made to a secured creditor during the gap period following the filing of an involuntary case. Thus, in vacating the bankruptcy court's avoidance judgment, the district court observed that recovery of those payments "would be futile because [the secured creditor] would be returned to its status as a secured creditor, the status it was in when the gap period payments were made." Id. *7. The situation in this case is very different. The claim arising upon the avoidance of Doral's post-petition mortgage was an unsecured claim because Doral had cancelled its pre-petition mortgages.

CONCLUSION
There was no abuse of discretion under § 549(a) and no violation of the single satisfaction rule under § 550(d). The judgment of avoidance and the sale order are AFFIRMED.
NOTES
[1] Doral's proof of claim on the smaller second mortgage indicates that this loan was originated by Sana Investment Bankers, Inc.
[2] Any ambiguity on this point is resolved with the statement in Doral's brief that the replacement note and mortgage were given "in exchange for the cancellation of the [original] notes and mortgages. . . ."
[3] Unless otherwise noted, all statutory references by section are to sections of the Bankruptcy Code, 11 U.S.C. § 101, et seq, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Section 549(a) provides:

Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate 
(1) that occurs after the commencement of the case; and
(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
(B) that is not authorized under this title or by the court.
The exception in § 549(b) relates to involuntary cases. The exception in § 549(c) involves the transfer of real property to a good faith purchaser without knowledge of the commencement of the case. Neither exception is implicated in this case.
[4] Doral cites several cases in support of its` position. See Adams v. Hartconn Assocs., Inc. (In re Adams), 212 B.R. 703 (Bankr.D.Mass. 1997); Weiss v. People Say. Bank (In re Three Partners, Inc.), 199 B.R. 230, 237 (Bankr. D.Mass.1995); Fleet Nat'l Bank v. Gray (In re BankVest Capital Corp.), 2003 WL 1700978 (D.Mass.2003). These cases are not on point. The Adams and Three Partners cases involve unauthorized post-petition payments on established pre-petition secured obligations. In each instance the court determined that there was no reason to avoid such payments because the creditor did not enhance its secured status with property of the estate. The BankVest case concerned payments made during the gap period between the filing of an involuntary petition and entry of an order for relief, and is not relevant to this case.
[5] Section 550(a) states:

Except as otherwise provided in this section, to the extent that a transfer is avoided under section . . . 549 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property from 
(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
(2) any immediate or mediate transferee of such initial transfer.